686 So.2d 837 (1997)
In re Judge Henry H. LEMOINE, Jr.
No. 96-0-2116.
Supreme Court of Louisiana.
January 14, 1997.
Timothy Joseph Palmatier, Metairie, Steven Robert Scheckman, Hugh M. Collins, New Orleans, for applicant.
Wood Brown, III, New Orleans, for respondent.

*838 ON RECOMMENDATION FOR DISCIPLINE FROM THE JUDICIARY COMMISSION OF LOUISIANA
CALOGERO, Chief Justice.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that respondent, Henry H. Lemoine, Jr., judge of the Pineville City Court, Wards 9, 10, and 11 of the Parish of Rapides, be publicly censured for misconduct. The Judiciary Commission conducted investigatory hearings, made findings of fact and law, and recommended that respondent be censured for violating LSA-C.C.P. Art. 151 and LSA-C.Cr.P. Art. 671 and Canons 1, 2 and 5 C(1) of the Code of Judicial Conduct. The misconduct charged was essentially two-fold. First, he did not voluntarily recuse himself in 32 civil and criminal cases, but rather presided over them notwithstanding that in each instance he was or had been associated with an attorney during the latter's employment in the case. Secondly, he purportedly acted improperly by frequently engaging in financial and business dealings with lawyers likely to come before the court on which he served. The Commission alleged that by reason of the charged violations, he had engaged in willful misconduct relating to his official duty and had engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. For the reasons which follow we find the charges proven and discipline warranted regarding Judge Lemoine's not recusing himself in 21 criminal cases, and in his frequently engaging in financial and business dealings with lawyers who were likely to come, and in fact did come, before him in the Pineville City Court.
The Commission's findings and recommendation that Judge Lemoine be censured rest on the following facts, which were either admitted by respondent in his answer to the Commission's Formal Charge, or established in his testimony before the Commission.
Respondent, Henry H. Lemoine, Jr., is an attorney who practices law in Pineville, LA. He was elected judge of the Pineville City Court, and took his oath of office on January 2, 1991. The position is a part-time judgeship. He has therefore been able to continue to practice law after becoming a judge of the City Court.
From June 19, 1989 until sometime in 1994, Harold A. Van Dyke, III, an attorney, rented office space from respondent at 607 Main Street, Pineville, Louisiana. In 1994, Van Dyke purchased from Judge Lemoine a one-third ownership interest in the Main Street building with an option to purchase another one-sixth. Since 1994, respondent has therefore co-owned the building located at 607 Main Street, Pineville, Louisiana, which bears a sign, "Lemoine-Van Dyke Law Center." From 1991 to April 30, 1995, Judge Lemoine also rented space at 607 Main Street to another attorney, one Michael A. Brewer. After taking office as Pineville City Court judge in 1991, respondent and Van Dyke associated each other on a total of twenty-one cases, nine criminal and twelve civil cases, either by referral or shared representation. Attorney fees were generally split between them on either a 50/50 or a 55/45 basis. With the tenant, attorney Brewer, respondent entered into a "Flexible Legal Agreement," dated August 11, 1993, by which respondent would thereafter provide Brewer overhead and miscellaneous incidentals in addition to office space, in exchange for a share of legal fees earned by Brewer.[1]
Respondent presided over 32 cases between 1991 and 1995 in the Pineville City Court in which one of the litigants was represented by either Van Dyke or Brewer. In none of these 32 cases did Judge Lemoine share fees. Respondent did not advise the litigants in those cases of his relationship *839 with Van Dyke or Brewer, and recused himself in only one, In the Interest of Adcock, No.1993-CC-92-1. That case, one involving child custody, precipitated a letter of complaint from one Dexter Adcock, father of the children in the custody dispute, and prompted the Judiciary Commission's investigation. Adcock sent his complaint to the Commission eight months before he filed the motion which prompted Judge Lemoine to recuse himself in the case. On December 11, 1995, the Judiciary Commission filed a Formal Charge against respondent.[2]
Recusation of judges is a serious and important legal procedure. It involves a judge's removing himself or being removed from a case and being replaced by another judge. Recusal may be voluntary as when a judge takes himself off a case for legally compelling reasons or simply because he believes that he cannot fairly and impartially judge a matter before him. LSA-C.C.P. art. 152; LSA-C.CR.P. art. 672. It may be involuntary as when a litigant files a motion to recuse for stated legal reasons, the judge refuses to recuse himself, and court proceedings thereafter result in his being recused by another trial judge or by an appellate court. LSA-C.C.P. art. 151; LSA-C.CR.P. art. 671. In this latter situation, the law dictates how the matter is to be resolved.[3]
In each possible recusal situation, there is a countervailing consideration which *840 militates in favor of a judge's not recusing himself, or being recused; that is, that the judge has an obligation, part of his sworn duty as a judge, to hear and decide cases properly brought before him. He is not at liberty, nor does he have the right, to take himself out of a case and burden another judge with his responsibility without good and legal cause.[4]
In the matter of recusal, there is a distinct difference between a legal review of the grounds for recusal and of a judge's decision not to recuse himself, on the one hand, and misconduct on the part of the judge, and imposition of discipline, on the other. Rarely, if ever, is it to be expected that the judge's call not to recuse himself after challenge will entail misconduct on his part. He has exercised a degree of discretion in that refusal, and his decision is subject to legal review and resolution in accordance with law. Nor is it likely that misconduct will arise in a situation where a judge, unchallenged, desists from recusing himself where there is no clear obligation on his part, statutory or otherwise, to do so. That judgment call is much like a judge's decision on substantive and procedural matters which daily come before him. The performance of his role as judge has him repeatedly exercising discretion, and misconduct, or ethical transgression, rarely ever comes into play.
Virtually all of the cases which have addressed grounds for recusal, even those which have drawn support from references to "appearances of impropriety," have been legal contests directed at whether a judge should be permitted to sit on a given case. They have involved reversing, or affirming, a judge's decision not to recuse himself, or herself. None have involved disciplinary violations based solely on a judge's failure to self-recuse. See, e.g., State v. Lemelle, 353 So.2d 1312, 1314 (La.1977) (reversing a criminal conviction and remanding for a new trial on the basis that the trial judge should have recused himself); State v. LeBlanc, 367 So.2d 335, 341 (La.1979) (reversing conviction, remanding for new trial based on judge's failure to recuse); State v. Krinke, 534 So.2d 431 (La.1988) (reversing lower courts in a criminal case and granting a motion to recuse); Rollo v. Dison, 402 So.2d 122 (La.App. 2d Cir.1981) (reversing a district judge's denial of a motion to recuse another judge in a civil case), writ denied, 404 So.2d 265 (La.1981).
Misconduct and judicial discipline, on the other hand,[5] is entirely different. Misconduct exposes a judge to punishment, anywhere from public censure (which may ultimately result in "removal" of the judge by the constituency that elects him) to removal from office by the Supreme Court. The Louisiana Constitution creates a Judiciary Commission which has the power to recommend to the Supreme Court these extremes, as well as suspension, with or without pay, and involuntary retirement. LA. CONST. art. V, § 25(C). This punishment for misconduct, not reversal of a judge's decision in a court case before him, is what is involved when cases like this one are brought in this court by the Judiciary Commission. One of the assorted types of misconduct that can expose a judge to punishment is a judge's not recusing himself when he has a legal obligation to do so, even though he has not been challenged by a motion to recuse. In that circumstance, his legal failing (not complying with clear statutory law) is both misconduct and an ethical transgression.
*841 The Code of Judicial Conduct consists of a series of canons which not only provide guidance and instruction but demand ethical conduct and the avoidance of unethical conduct or practices. The Code is "binding on all judges," In re Decuir, 95-0056, p. 8 (La.5/22/95); 654 So.2d 687, 692, and judges are "governed exclusively by [its] provisions." La.R.S. 42:1167. This legislative statement in R.S. 42:1167 that judges are governed exclusively by the Code of Judicial Conduct is not contrary to the Constitution's exclusive grant of authority to the Judiciary Commission and this Court in the realm of judicial misconduct. Because the current Code contains some general commands, for example Canon 1 ("A Judge Shall Uphold the Integrity and Independence of the Judiciary") and Canon 2 ("A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities"),[6] it is apparent that the Code covers all misconduct as well, since misconduct offends, at the least, Canons 1 and 2. It is therefore safe to say, as the legislature did in 42:1167, that judges are governed exclusively by the Code's provisions, notwithstanding the self-evident fact that the Court has exclusive authority to punish misconduct, unlimited by the Code of Judicial Conduct.
While violations of the canons of the Code of Judicial Conduct may rise to the level of sanctionable misconduct, they need not, necessarily. Any number of minor failings on the part of a judge may fall short of the high standards of conduct required of judges by Canon 1, or constitute acts which do not promote public confidence in the integrity and impartiality of the judiciary under Canon 2(A). Yet, only such violations of the Canons as can independently be said to fall within one of the constitution's enumerations in Article V, § 25(C) (see footnote 6 hereinabove) may give rise to one or more of the sanctions later recited in that article and section of the constitution. Less serious failings may violate the Code of Conduct, yet not constitute sanctionable misconduct subject to punishment through the disciplinary process.[7] Of course, an accumulation of minor ethical transgressions may together amount to sufficiently serious misconduct to qualify as sanctionable misconduct under the Constitution.
The jurisprudence of this Court is to the same effect. Indeed, as we said in Chaisson, for example,
We find the facts establishing a violation of Canon 2 are consistent with the conduct set forth in La. Const. Art. V, § 25(C) for which this court may impose sanctions.... [A]s we held in In re Wilkes ... violations of the Canons can, without more, serve as a basis for discipline under Article V, § 25(C).
In re Chaisson, 549 So.2d 259, 266 (La. 1989) (emphasis provided). The implicit qualification of the Chaisson passage cited above is that the Canon violation must be serious, and we believe, sufficiently serious as wrongful conduct to warrant the discipline sanctioned by the Constitution. So, too, in Decuir we stated that, "This Code is binding on all judges, and violations of the Canons set forth *842 therein may serve as a basis for discipline under Article V, § 25(C)...." Decuir at 8, 654 So.2d at 692 (emphasis supplied); see also In re Wilkes, 403 So.2d 35, 40 (La.1981) (same).
The Code contains general and specific admonitions, some mandatory ("shall"), some hortatory ("should"). The applicable Louisiana Code at the time of respondent's challenged conduct was the 1976 Code as amended. It was modeled in part upon the American Bar Association's 1972 Model Code. The amendments to our Code, particularly those of 7/8/96, have included the frequent substitution of the word "shall" for the word "should" in its ethical standards.[8] Relevant to the shall/should issue, the Preamble to the ABA Model Code of 1990 states:
When the text uses "shall" or "shall not," it is intended to impose binding obligations the violation of which can result in disciplinary action. When "should" or "should not" is used, the text is intended as hortatory and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined. When "may" is used, it denotes permissible discretion or, depending on the context, it refers to action that is not covered by specific proscriptions.
ABA Model Code of Judicial Conduct (Preamble 1990).
Respondent is charged with violating C.C.P. art. 151, C.Cr.P. art. 671, Canon 1, Canon 2 and Canon 5(C)(1) as applicable in the years 1991-95. Violation of the canons is premised upon his neglect to recuse himself in the same 32 cases over which he presided, and upon his engaging in frequent financial and business dealings with attorneys Van Dyke and Brewer, the facts regarding which are admitted in the stipulation. All of the conduct under review in the instant case took place before July 8, 1996, when certain amendments to our Code were adopted by this Court.[9]
Articles 151 and 671 of the respective procedure codes are discussed at greater length hereinbelow. The relevant canons, as written prior to the amendments (and applicable in this case), are here quoted fully, with all July 8, 1996 changes noted in brackets. One of the major amendments in these three canons was to follow the ABA's lead and substitute "shall" for "should" (see footnote 7 above). "Should," if underlined, has been changed to "shall" effective July 8, 1996. Other July 8 changes are noted in brackets.
Canon 1 provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code [are to] be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial [independence].
Canon 2 provides:
A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow family, social, [political,] or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of judicial office to advance the private interest of [the judge or] others; nor should a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness....
Canon 5(C)(1) provides:

*843 A judge should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of judicial duties, exploit the judge's judicial position, or involve the judge in frequent transactions with lawyers or persons likely to come before the court on which he or she serves.
Much of what we say in this opinion and the principles regarding recusal are applicable to cases which have arisen both before and after the July 8, 1996 amendments to the Code of Judicial Conduct. It does need restating, however, that this case arose fully under Canon 3 before its July 8 revision regarding recusal. As it existed at all times pertinent to this case, Canon 3(C) provided simply that "[t]he recusation of judges is governed by law."[10] The "law" referred to in Canon 3(C) was found in Articles 151 and 152 of the Code of Civil Procedure, and in Articles 671 and 672 of the Code of Criminal Procedure. See Donnell v. Donnell, 567 So.2d 1143, 1145-46 (La.App. 2d Cir.1990). A long line of Louisiana jurisprudence holds that the list of grounds for recusal in these procedure code articles is exclusive, not illustrative, and there must be a statutory ground for recusing a judge. E.g., State v. Pailet, 246 La. 483, 165 So.2d 294, 297 (1964); Pierce v. Charity Hospital, 550 So.2d 211 (La.App. 4th Cir.1989), cert. denied, 551 So.2d 1341 (La.1989); Christian v. Christian, 535 So.2d 842 (La.App. 2d Cir.1988); Southern Builders, Inc. v. Carla, Charcoal, Inc., 357 So.2d 638 (La.App. 3d Cir.1978), cert. denied, 358 So.2d 632 (La.1978). So, essentially in this case, the events concerning which fully preceded the July 1996 amendments, if regarding recusal a judge's conduct does not offend the statutory law, it is strongly arguable, if not irrefutable, that there is no violation of the Code of Judicial Conduct, nor a violation of Article V, § 25 of the Louisiana Constitution. What then did the law require regarding recusal, and has Judge Lemoine's conduct offended that law?
As earlier indicated, Judge Lemoine presided over 32 cases, 25 where Van Dyke represented a party (5 civil, 20 criminal), and 7 where Michael A. Brewer represented a party (6 civil, 1 criminal). The relevant statutory recusal provisions regarding criminal and civil cases differ somewhat. The criminal provision, C.Cr.P. art. 671, recites that in a criminal case a judge shall be recused when any of its six enumerations apply. Article 671:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney; or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a witness in the cause;
(5) Has performed a judicial act in the cause in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
Emphasis supplied.
Article 151 of the C.C.P., on the other hand, recites that a judge shall be recused [only] when he is a witness in the cause (subsection A), and that he may be recused (subsection B) when he

(1) Has been employed or consulted as an attorney in the cause, or has been *844 associated with an attorney during the latter's employment in the cause;

(2) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;
(3) Has performed a judicial act in the cause in another court; or
(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of the attorney, within the second degree;
(5) Is biased, prejudiced, or personally interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings;
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
Emphasis supplied.
Under the Code of Criminal Procedure, it is evident that for the six mandatory provisions of C.Cr.P. art. 671, the judge himself, the judge deciding whether to recuse a challenged judge, and the reviewing appellate court have no discretion if any of the six grounds are proven. In that event the judge "shall be recused." Regarding the civil procedure articles, the judge himself, the deciding judge and the reviewing appellate court similarly have no choice when the challenged judge is a witness in the cause, but "may" recuse when the other five enumerations apply. While "may" signifies that a matter is permissive, it is evident in all events that the "may be recused" subsection (B) of C.C.P. art. 151 recites applicable grounds for recusal in the statutory law of the state, just as do C.Cr.P. art. 671 A's six mandatory grounds, and Article 151(A)'s one mandatory ground.
The relevant grounds for recusal in this case are C.C.P. art. 151 B(1), a permissive ground, and C.Cr.P. art. 671 A(3), a mandatory ground. Other than the permissive/mandatory distinction, the two provisions are identical. They concern the situation when a judge "[h]as been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause." We believe these respective grounds for recusal are applicable regarding respondent's conduct in this case.
While respondent was himself not employed or consulted in the cases over which he presided, he was during Van Dyke's and Brewer's employment "in the [respective] cause[s]"in fact while the cases were being tried before him"associated" with Van Dyke and with Brewer. That association as contemplated in the respective articles surely is an association in the practice of law, be it a law partnership or a less permanent law practice arrangementlike sharing law office space, or associating in the handling of legal matters and/or sharing legal fees. Whether the article's contemplated "associat[ion]" covers other than law practice associations (for instance, political, civic, religious or other non-law practice relationships) we need not decide in this case, although a good argument can be made that it does not.
Respondent was clearly associated in the practice of law with Van Dyke and Brewer. He shared legal representation in cases and split fees. He co-owned with Van Dyke a building in which the two maintained their law offices, a building bearing a sign, "Lemoine-Van Dyke Law Center." He rented Brewer law office space in the same building and had reciprocal fee arrangements with Brewer to his financial advantage in lieu of rent. So, the grounds for recusal in both C.C.P. art. 151 B(1) and C.Cr.P. art. 671 A(3) existed in this case.
Respondent's presiding in the criminal cases wherein Van Dyke and Brewer were counsel for the litigant20 cases regarding Van Dyke and 1 case regarding Brewer violated C.Cr.P. art. 671 A(3). He was required to recuse himself ("shall be recused") and did not do so. He therefore violated the law regarding recusal to which Canon 3(C) referred.
*845 His not recusing himself in the eleven civil cases is a different matter. As applicable at the time, the only expression regarding recusal in the Code of Judicial Conduct was that "recusation is governed by law," and the only law applicable in civil cases was C.C.P. 151's permissive standard that a judge "may be recused" when (as in a case like this one, we have determined) he has been associated with an attorney during the latter's employment in the cause. There is no legal directive, or mandateno "shall"in C.C.P. art. 151, or any other statute, that tells a judge that he must recuse himself in a given civil case, other than if he is to be a witness. Accordingly, his not recusing himself in the civil cases we do not find punishable under the Constitution in light of the then extant canons of the Code of Judicial Conduct and the state of the law as it existed at the time of the conduct in question. Whether our conclusion would be different under the revised Code of Conduct we need not decide here. It is worth noting, however, that while the new canon on recusation merely exhorts"should"it does not only speak to disqualification "required by law" ("or applicable Supreme Court rule") but also recites that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."
Judge Lemoine's conduct did not offend the law regarding his not recusing himself in the civil cases on which he sat. Nonetheless, there is the independent but related matter of his involving himself in frequent transactions with lawyers likely to come before the court in which he or she serves, in violation of Canon 5 C(1), in fact the very lawyers whose association with the judge established the permissive ground for recusal in C.C.P. art. 151 B(3). Judge Lemoine involved himself in frequent transactions with lawyers Van Dyke and Brewer, who were clearly persons "likely to come before" his court. He sold to one of them (Van Dyke) 1/3 of his building, agreeing to sell another 1/6th, and practiced law with Van Dyke out of the same co-owned building, and Van Dyke came before Judge Lemoine's court representing clients 25 times. Judge Lemoine rented space to, and shared fees with, Brewer, who appeared before him 7 times. These were frequent financial and business dealings with two lawyers in the same small community of Pineville, Louisiana in the Parish of Rapides. It was surely apparent to Judge Lemoine at the time of the financial and business dealings that the two lawyers were likely to come before the court on which he served, a violation of Canon 5 C(1) of the Code of Judicial Conduct.
We are not oblivious to the fact that the Preamble to the 1990 ABA Model Code, after which our Code of Judicial Conduct was modeled, says that "[w]hen `should' or `should not' is used, the text [of the Model Code] is intended as hortatory and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined" (see the more complete quotation of the ABA Preamble hereinabove). However, this Court's jurisprudence has been to the contrary. When conduct violating the canons is sufficiently serious to constitute punishable misconduct, we have relied in part on canonical "should" violations to find misconduct and impose discipline. See, e.g., In re Huckaby, 95-0041 (La.5/22/95), 656 So.2d 292; Decuir, 95-0056, 654 So.2d 687; Chaisson, 549 So.2d 259; In re Soileau, 502 So.2d 1083 (La.1987). That the violation of "should" canons may provide the basis for discipline under the Louisiana Constitution and this Court's jurisprudence is highlighted by the fact that the original 1976 Louisiana Code of Judicial Conduct contained all "shoulds" and no "shalls" in its canons, see footnote 8 above, yet discipline was still imposed for violations thereof. See, e.g., Wilkes, 403 So.2d at 41-42 (finding violations of Canons 1, 2, and 5(C)(1) in their "should" forms sufficient to warrant discipline under the Constitution). Reaffirming that jurisprudential tradition is our own commentary to Canon 1 in the July 8, 1996 amendments to the Code of Judicial Conduct, which warns that "a clear violation of any canon in which should is used, a clear abuse of discretion by the judge in conforming his or her conduct to any such Canons ... may also result in judicial discipline," an obvious allusion to such conduct as is sufficiently serious to warrant *846 discipline under Article V, § 25 of the Constitution.
In conclusion, Judge Lemoine is guilty of misconduct in two respects: (1) his not recusing himself in the 21 criminal cases violated C.Cr.P. art. 671 and thus Canons 1 and 2; (2) in engaging in financial and business dealings with Van Dyke and Brewer, Judge Lemoine violated Canon 5 C(1) and thus Canons 1 and 2 as well. Canon 1 tells us that an "independent and honorable judiciary is indispensable to justice in our society," and that "a judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved." Canon 2 instructs that a judge "should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 5 C(1) recites that a judge "should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality," or "involve the judge in frequent transactions with lawyers or persons likely to come before the court on which he or she serves."
Respondent's not recusing himself in the criminal cases, and acting as judge in those cases, along with his frequent financial and business transactions with lawyers likely to come before his court, constituted persistent and public conduct prejudicial to the administration of justice as well as willful and persistent failure to perform his duty that brings the judicial office into disrepute.
The Judiciary Commission has recommended that respondent be censured, a disciplinary penalty which, in seriousness, is at the bottom of the Louisiana Constitution's recited sanctions. In determining the proper punishment to be meted here, it should also be noted that Judge Lemoine's conduct has already caused him adversity. His bid for reelection in the fall of 1996 fell short when the majority of his Pineville constituents replaced him by voting his opponent into office. His term of office therefore ended on December 31, 1996.
Were it not for the fact that respondent is no longer a judge, we might well be inclined to impose more severe discipline than that recommended by the Judiciary Commission. However, under all of the circumstances and considering that we have found supported by the law and the evidence the charge that he violated C.Cr.P. art. 671, and that in doing so he offended Canons 1 and 2, and further that he violated Canon 5 C(1), we do hereby publicly censure Judge Henry Lemoine for engaging in "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute," and "willful and persistent failure to perform his duty," under Article 5, Section 25(C) of the Louisiana Constitution.

DECREE
Respondent Judge Henry Lemoine is hereby publicly censured for misconduct.
BLEICH, J., concurs.
VICTORY, J., concurs with reasons.
VICTORY, Judge, concurs.
While I agree with the majority that Judge Lemoine violated C.Cr.P. art 671 in failing to recuse himself in the 20 criminal cases, I disagree with the majority's conclusion that a judge may not be subject to discipline for failure to recuse himself in a civil case under the Code of Judicial Conduct prior to the July 1996 amendment.
According to the majority's rationale, a judge in a civil case that "is biased, prejudiced, or personally interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings" need not recuse himself from the case and failure to recuse himself in such a case in not sanctionable, ethical misconduct. C.C. P. art. 151(B)(5). This is similarly true for a judges failure to recuse himself in any of the other enumerated instances found in Art. 151.[1]
*847 The majority concludes by holding that Judge Lemoine's failure to recuse himself in the 21 criminal cases violated C.Cr.P. art. 671 and thus Canons 1 and 2. According to the majority:
Canon 1 tells us that an "independent and honorable judiciary is indispensable to justice in our society," and that "a judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary be preserved." Canon 2 instructs that a judge "should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
Despite Art. 151's permissive language, I fail to understand how the principles enunciated in Canons 1 and 2 are any less violated in a civil case in which a judge fails to recuse himself. Accordingly, I would hold that a judge's failure to recuse himself in any of the Art. 151 instances could be, depending on the facts and circumstances, a violation of Canons 1 and 2 of the Code of Judicial Conduct.
NOTES
[*] Marcus, J., not on panel, Rule IV, Sec. 3.
[1] The shared percentage of fees was to vary depending on the circumstances of the case. Pursuant to their agreement, respondent was to receive 50% of the fees earned in cases, later to be identified, brought in by Brewer and worked by Brewer alone, 60% if both worked these cases. Respondent was to receive 70% for cases, later to be identified, that he brought in but were worked by him and Brewer together. All cases brought in were not automatically subject to the arrangement. Paragraph XI of the agreement gave each party "a mutual and complete right of refusal on any case." Thereafter, respondent and Brewer in fact entered into fee arrangements in three cases, one each on March 8, 1994, June 16, 1994, and September 2, 1994.
[2] The Charge reads as follows:

A. That after first taking the judicial oath of office on January 2, 1991, and each and every year thereafter, you, JUDGE LEMOINE, have operated the "Lemoine-Van Dyke Law Center" located at 6078[sic] Main St., Pineville, LA 71360, with Harold A. Van Dyke, III, an attorney. From June 19, 1989 through 1994, Harold A. Van Dyke, III rented office space from you at 6078[sic] Main St., Pineville, LA 71360. Thereafter, in 1994, Harold A. Van Dyke, III purchased a 1/3 ownership interest from you, with an option to purchase a remaining 1/6 interest, in the property located at 6078[sic] Main St., Pineville, LA 71360.
B. That after first taking the judicial oath of office on January 2, 1991, and each and every year thereafter until April 30, 1995, you, JUDGE LEMOINE, also rented office space at 6078[sic] Main St., Pineville, LA 71360 to Michael A. Brewer, an attorney.
C. That after first taking the judicial oath of office on January 2, 1991, and each and every year thereafter, you, JUDGE LEMOINE, and Harold A. Van Dyke, III, have associated each other on a total of approximately twenty-one (21) criminal and civil cases, including both the referral of cases to each other and also the shared representation on other cases wherein you each were responsible for the work product. Generally, all fees in such cases were split between you and Mr. Van Dyke on either a 50/50 or 45/55 basis.
D. That you, JUDGE LEMOINE, and Michael A. Brewer entered into a "Flexible Legal Agreement," dated August 11, 1993, which provided office space, overhead and miscellaneous incidentals in exchange for a fee sharing arrangement between Mr. Brewer and you, depending upon the circumstances of the case. Thereafter, on March 8, 1994, June 16, 1994 and September 2, 1994 you and Mr. Brewer entered into fee agreements on particular cases.
E. That you, JUDGE LEMOINE, had occasion to preside over certain legal matters in the Pineville City Court, Wards 9, 10 & 11, in which one of the litigants had occasion to be represented by Harold A. Van Dyke, III. You did not advise the litigants in said cases of your financial relationship with Mr. Van Dyke and/or you did not recuse yourself, despite the financial relationship. Those cases include, but are not limited to:
.... [Omitting list of the 25 cases handled by Van Dyke]
F. That you, JUDGE LEMOINE, had occasion to preside over certain legal matters in the Pineville City Court, Wards 9, 10 & 11, in which one of the litigants had occasion to be represented by Michael A. Brewer. You did not advise the litigants in said cases of your financial relationship with Mr. Brewer and/or you did not recuse yourself, despite the financial relationship. Those cases include, but are not limited to:
.... [Omitting list of the 7 cases handled by Brewer]
G. By reason of the foregoing Sections A through F, you have:
(1) Violated Canons 1, 2 and 5 C(1) of the Code of Judicial Conduct adopted by the Supreme Court of Louisiana, effective January 1, 1976; and
(2) Engaged in willful misconduct relating to your official duty; and,
(3) Engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
[3] The procedure for recusal is identical in criminal and civil matters. Under Article 154 of the C.C.P. or Article 674 of the C.Cr.P., upon the filing of a written recusal motion by a party in which a valid ground for recusal is set forth, the judge "shall either recuse himself, or refer the motion to another judge or a judge ad hoc" as provided in Articles 155 and 156 of the C.C.P., and Article 675 of the C.Cr.P.
[4] There is this consideration too. A judge should not recuse himself if there is no impediment to his sitting in a case in which he can be fair and impartial, and yet he is challenged by a litigant who believes that the prospect of success in the case, before a different judge, is or might be better.
[5] By use of the word misconduct in this opinion, we refer only to that misconduct described in the Louisiana Constitution, Article V, § 25(C), which states:

(C) Powers. On recommendation of the judiciary commission, the supreme court may censure... a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
[6] Prior to July 8, 1996, the titles to these two Canons used the hortatory word "Should" rather than the mandatory "Shall." The standards then set forth were therefore exhortations rather than commands.
[7] This approach is evidenced by the Court's recently adopted amendments to the Code of Judicial Conduct, in particular the Commentary to Canon 1. That Commentary states that the violation of binding obligations ("shall" obligations) "can" result in disciplinary action, and further that violation of "should" obligations "may also result in judicial discipline." When this Court adopted and then amended the Code of Judicial Conduct, we clearly did not contemplate that discipline would be automatically imposed upon proof of a violation of the canons, without regard to the seriousness of the violations.

The ABA Model Code is no different. In the Preamble to the 1990 ABA Model Code of Judicial Conduct, the drafters write:
The text of the Canons and Sections is intended to govern conduct of judges and to be binding upon them. It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the text and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.
[8] The original 1976 Louisiana Code of Judicial Conduct used the word "should" 58 times, and the word "shall" 0 times, in its ethical standards. In contrast, after the July 8, 1996 amendments, the amended Code uses "should" a mere 14 times and "shall" 69 times in its ethical standards.
[9] The amendments, prompted in part by the ABA's 1990 Model Code changes, stemmed from recommendations made in the spring of 1996 by a 22-member Advisory Committee appointed by this Court in 1994.
[10] Canon 3(C) now provides, as of 7/8/96:

C. Recusation. A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself.
[1] Thus, a judge could also not be subjected to discipline for his refusal to recuse himself where:

1. He has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
2. At the time of the hearing or any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;
3. Has performed a judicial act in the cause in another court;
4. Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of the attorney, with the second degree; or
* * * * * *
6. Would be unable, for any other reason, to conduct a fair and impartial trial.