JOHNSON, Justice.[1]
|! This dispute between Disaster Restoration Dry Cleaning, LLC (hereinafter referred to as “Disaster”) and Pellerin Laundry and Machinery Sales Company, LLC (hereinafter referred to as “Pelle-rin”) resulted in two lawsuits being filed in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. The first suit was filed by Disaster against Pellerin for breach of contract. This suit was randomly allotted to Division “N”, in which Judge Hans Liljeberg presides. The second suit was filed by Pellerin against Disaster for failure to pay the outstanding balance on an open account. This suit was randomly allotted to Division “B”, where Judge Fredericka Wicker presided. In both suits, Attorney Leonard L. Levenson filed a Motion to Enroll as co-counsel to Attorney Edmond C. Haasé, who represented Pellerin. The enrollment was granted in Division “B”, but denied in Division “N”. |2From this ruling, Pellerin filed a writ application with the Fifth Circuit Court of Appeal, which granted the writ and remanded the matter with instructions to the trial court to allow the enrollment of co-counsel. Disaster Restoration Dry Cleaning, LLC v. Pellerin Laundry Machinery Sales Com *1096 pany, Inc., 05-C-64 (La.App. 5 Cir. 2/16/05). As a result of the Fifth Circuit’s ruling, Disaster filed a writ application in this Court. This Court granted the application for the purpose of determining whether the district court judge erred in denying the enrollment of co-counsel. Disaster Restoration Dry Cleaning, LLC v. Pellerin Laundry Machinery Sales Company, Inc., 05-0715 (La.5/13/05), 902 So.2d 1000.

FACTS AND PROCEDURAL HISTORY

On October 25, 2001, Pellerin and Disaster entered into a contract where Pellerin agreed to design a dry cleaning plant and supply the plant’s equipment which would be capable of cleaning fire damaged and/or dirty retail clothing. In return, Disaster agreed to purchase the equipment and pay for services on an open account.
On November 5, 2004, Disaster filed a Petition for Damages in the 24th Judicial District Court (Case No. 613-592), arguing that Pellerin breached the contract, and as a result, Disaster suffered economic damages because the plant never functioned properly from its inception. In its petition, Disaster argued that the “Green Jet”, which is a machine designed to clean the fire damaged clothing, malfunctioned on different occasions. Disaster also argued that because of Pellerin’s failure to deliver on its contract, it never fully opened its retail business, “The Green Cleaners”. This suit was assigned to Division “N” under the authority of Judge Liljeberg.
laThree days later, on November 8, 2004, Pellerin filed a Petition on Open Account (Case No. 613-692), seeking payment of the past due balance for the delivered equipment and services rendered in the amount of $38,007.81. In its petition, Pellerin asserts that it sold and delivered to Disaster on open account certain laundry machinery and equipment and provided labor services, for which Disaster failed to pay its outstanding balance. Pellerin noted that it forwarded a formal written demand in an attempt to procure owed monies, but to no avail. This suit was assigned to Division “B”. The counsel of record representing Pellerin was Edmond Haasé (hereinafter referred to as “Mr. Haasé”) of Ajubita, Leftwieh & Salzer, LLC. In the first suit, Mr. Haasé filed a Motion for Extension of Time in which to respond. Subsequently, Attorney Leonard L. Levenson (hereinafter referred to as “Mr. Levenson”) filed a Motion to Enroll as co-counsel to Mr. Haasé. The trial judge in Division “B” granted the motion whereas Judge Liljeberg of Division “N” denied such. This denial is the subject of this matter.
Judge Liljeberg denied Mr. Levenson’s enrollment, stating:
The Court cannot allow an attorney to enroll when the same would create grounds for recusal.
From this ruling, Pellerin filed a writ application with the Fifth Circuit Court of Appeal arguing that Judge Liljeberg improperly denied the enrollment ex propria motu without affording the parties a chance for a hearing by another judge on the propriety of Mr. Levenson’s enrollment or on whether Judge Liljeberg should recuse himself. The Court of Appeal granted the writ, holding that:
The trial court abused its discretion by interfering with the freedom of relator to select counsel of its choice. Accordingly, we grant this writ [4and remand the matter with instructions to allow the Motion to Enroll As Co-Counsel of Record.
In response to the Court of Appeal’s ruling, Disaster filed its writ application with this Court, seeking a reversal of the Court of Appeal’s decision, arguing that such ruling would allow parties to circumvent the random allotment procedure and allow *1097 judge shopping. This Court granted Disaster’s application for review.

DISCUSSION

The issue before this Court is whether the Court of Appeal erred in reversing the trial court and allowing Pellerin to enroll new co-counsel where the addition of new counsel presents grounds for recusal of the trial judge.
Before addressing the issue in this case, we note that pursuant to LSA-C.C.P. art. 1561, the two lawsuits (Petition for Damages and the Suit on Open Account) will eventually be consolidated given the interrelation and commonality of the facts, law and parties. These suits would ordinarily be consolidated and transferred to Division “N”, Judge Liljeberg’s court, due to this matter being assigned the lower docket number. Having stated such, it is imperative to review this trial judge’s actions as the entire case could be forwarded to his court.
The Code of Judicial Conduct, which is binding on all judges, instructs them as to their expected ethical conduct. In re Judge Henry H. Lemoine, Jr., 96-2116 (La.1/14/97), 686 So.2d 837, 841 (Citing In re DeCuir, 95-0056, p. 8 (La.5/22/95), 654 So.2d 687, 692). In reviewing the duties of a judge, the Code of Judicial Conduct maintains that a judge shall uphold the integrity and independence of the judiciary. See, Canon 1. A judge shall avoid impropriety and the appearance thereof in all activities, thereby refraining from bias or prejudice in favor of any party and be 1 ^objective in determining issues presented before him. See, Canon 2. A trial judge is also obligated to be impartial in performing its duties. See, Canon 3. A party, who challenges the noncompliance of this duty, has the burden to prove that a recusal is warranted by presenting evidence of a substantial nature and based on more than conclusory allegations. Canon 3(C) states that when a judge’s impartiality is questioned, the judge shall disqualify himself in a proceeding. The Louisiana Code of Civil Procedure Article 151 provides in pertinent part that: ■
B. A judge of any court, trial or appellate, may be recused when he:
(5). Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or parties’ attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
This Court recognized the judge’s obligation to hear and decide cases properly brought before the judge, without burdening another judge with that responsibility. See, In re Judge Henry H. Lemoine, Jr., at 840. Once confronted with valid grounds of recusal, the judge is obligated to either order recusal or refer the case to another judge for a hearing on the motion to recuse. LSA-C.C.P. art. 154. LSA-CCP art. 155(B) provides that the matter would be assigned to another judge of the court through random allotment.
Disaster argues that Judge Liljeberg properly denied Mr. Levenson’s enrollment as the enrollment of an additional attorney should not be allowed that would unequivocally force the recusal of the trial judge to whom the case has been randomly allotted. Disaster categorizes this as impermissible “judge shopping”.
Disaster maintains that prior to hiring Mr. Levenson, Pellerin was represented by an attorney, Mr. Haasé. According to Disaster, Pellerin knew that enrolling Mr. | (;Levenson would force Judge Liljeberg’s recusal as Judge Liljeberg is a material witness in an unrelated suit (involving a fee dispute) where Mr. Levenson is suing Liljeberg Enterprise, Inc., a company *1098 owned by Judge Liljeberg’s father and uncle. Pellerin did not hire Mr. Levenson until both cases were filed and allotted to the various divisions. As a result of “judge shopping”, the trial court would be stripped of its control and discretion to adjudicate matters as it deems necessary. “Judge shopping” would also render the process of random allotment a mere formality.
Disaster also argues that Pelleriris actions violated Rule 9.12 of the Uniform District Court Rules, which provides that:
all licensed Louisiana attorneys in good standing may enroll as counsel of record: (1) by oral motion made in open court when all parties or their counsel are present, or (2) by filing a written Notice of Enrollment in accordance with La.Code Civ. Proc. art. 853 with the clerk of court, with copies to all other enrolled counsel or unrepresented parties and to the Court.
. Disaster further argues that, because Pellerin wanted to force Judge Liljeberg’s recusal, it attempted to enroll additional counsel, who presented a conflict of interest. Hence, the trial court properly denied Mr. Levenson’s enrollment.
In support of its position, Disaster cites In Re Judge Joel G. Davis, 03-2801 (La.2/4/02), 865 So.2d 693, 694, which held that a judge should not perform any judicial act when knowing that there exists a potential conflict. In that case, Judge Davis would handle the preliminary criminal matters assigned to his father, the indigent defender. Thereafter, Judge Davis would recuse himself allowing the case to be allotted to another judge. This Court ruled that the subsequent recusal was not sufficient to cure the ethical violation. According to Disaster, that case is analogous to the case at hand in that Judge Liljeberg properly denied Mr. Le-venson’s enrollment 17knowing that it would result in his recusal because of the potential conflict. Therefore, Judge Lilje-berg was prohibited from performing the judicial act of allowing Levenson’s enrollment.
Disaster further argues that granting the motion to enroll would have led to “absurd results and consequences.” The attempt by Pellerin to control the trial judge who presides over this matter is similar to “forum shopping” which is deemed impermissible. Warner v. Carimi Law Firm, 725 So.2d 592, 600 (La.App. 5th Cir.1998). The effects of “judge shopping” would open floodgates in Jefferson Parish and render useless the procedure of random allotment in the 24th Judicial District Court.
Disaster also cites State v. Jackson, 04-758 (La.App. 5th Cir.11/30/04), 889 So.2d 1071, 1073, a case in which the Fifth Circuit affirmed the trial court’s denial of the motion to continue, where the defense attorney hired five days before trial requested a continuance because he would be unavailable on the date of trial. The Fifth Circuit ruled that the defendant did not have a constitutional right to make a choice of counsel prior to trial that would cause disrupting implications to the orderly trial of eases. Id. at 1073, 1074.
In its appellate brief, Pellerin asserts that the trial judge improperly denied its Motion to Enroll. Pellerin notes that Disaster provided no supportive evidence to substantiate its contention that Mr. Leven-son was intentionally hired to force the trial judge’s recusal or that the enrollment would “unequivocally” cause the recusal. To the contrary, Pellerin submits Mr. Haasé, its corporate general counsel, filed the Suit on Open Account prior to being served with Disaster’s Petition for Breach of [RContract. When Pellerin determined the necessity of having a more experienced trial litigator to properly represent its interest in both suits, it retained Mr. Leven- *1099 son as co-counsel because of his experience as a trial advocate. Once contacted, Mr. Levenson disclosed to Pellerin the possible conflict between himself and the trial judge.[2] It is not unusual for commercial litigants to have general counsel to represent them in a variety of matters, but seek the assistance of litigators and trial counsel when the need arises. Pellerin also asserts that in denying the motion to enroll ex parte, Judge Liljeberg failed to afford the parties with an opportunity for a hearing by another judge on the propriety of Mr. Levenson’s enrollment, or on the issue of whether Judge Liljeberg should have recused himself or be recused. No party suggested the trial judge’s recusal. Pellerin argues if the trial judge believed a recusal was necessary because of his status as a material witness in the unrelated case, then the judge should not have acted on the motion to enroll, but rather should have recused himself or referred the matter to another judge.
Pellerin contends that Disaster’s reliance on In Re Judge Joel G. Davis is misplaced because the case supports Pelle-rin’s position that Judge Liljeberg should have, at a minimum, referred the motion to enroll to another judge and then recused himself from the case. When the trial judge recognized that a possible conflict existed that would question his impartiality, he should not have acted on the pending motion to enroll.
IsWe agree that once the trial judge determined that a ground for his recusal existed, he should have refrained from acting on the motion, but referred the matter to another judge.
In In re Judge Henry H. Lemoine, Jr., 96-2116 (La.1/14/97), 686 So.2d 837, this Court publicly censured a judge for misconduct for failing to self-recuse in criminal eases. Judge Henry Lemoine, who was a city judge[3] in Pineville City Court, violated LSA-C.C.P. arts. 151, 671 and Canons 1, 2, and 5 C(l) of the Code of Judicial Conduct when he: 1) refused to voluntarily recuse himself in 32 civil and criminal cases after having being associated with an attorney during his employment in the case and 2) improperly engaged in business dealings with attorneys likely to come before him. Specifically, Judge Lemoine associated in the practice of law with two attorneys, Van Dyke, III and Michael Brewer, by sharing legal representation in cases and splitting fees.[4] The Judiciary Commission found that he engaged in willful misconduct which was prejudicial to the administration of justice. This Court recognized that if no impediments or legal cause were proven, then a judge should not recuse himself. See, In re Judge Henry H. Lemoine, Jr. This Court also recognized that a judge should not recuse himself if a litigant challenges him because the litigant | inbelieves that the *1100 prospect of success would be greater before a different judge. See, In re Judge Henry H. Lemoine, Jr. In a civil case, a judge’s failure to self-recuse does not violate the Canons of the Code of Judicial Conduct; however, the judge’s exercise of discretion is subject to legal review and resolution in accordance with the provisions of the Code of Civil Procedure. Id. at 840. This Court followed well established jurisprudence which holds that the judge sought to be recused has a duty to stand aside and to appoint a judge ad hoc to pass upon the validity of the recusation. See State v. Savoy, 207 La. 982, 22 So.2d 402 (1945); State v. Judge of Twenty-First Judicial District, 37 La. Ann, 253 (1885); State ex rel. Nolan v. Judge of Twenty-Second Judicial District, 39 La.Ann. 994, 3 So. 91 (1887); State ex rel. Tyrrell v. Judge of Fifteenth Judicial District, 33 La.Ann. 1293 (1881); State v. Price, 274 So.2d 194, 197 (La.1973); Tatum v. Orleans Parish School Board, 04-1190 (La.App. 4 Cir. 1/26/05), 894 So.2d 1180.
According to Louisiana Code of Civil Procedure article 152(A), a judge may re-cuse himself from any case in which ground for recusation exists, even where no party has filed a motion for recusation.
Canon 3 C of the Code of Judicial Conduct provides that a judge should disqualify himself in a proceeding in which the judge’s impartiality might be reasonably questioned. In the case sub judice, the trial judge knew he was a witness in the ongoing litigation regarding the fee dispute between his family and Pellerin’s new co-counsel, Mr. Levenson, who could possibly question the judge’s impartiality.
In State ex rel Nolan v. Judge Twenty-Second Judicial District Court, 39 La.Ann. 994, 3 So. 91 (La.1887), where plaintiff sought to enjoin the use of a local Innewspaper and to recuse the district judge on grounds of relationship, the district judge afterwards dissolved the writs. The Plaintiff argued that the district judge had no authority to take any action, but should have referred the matter to another judge to resolve the recusation issue. This Court agreed, prohibiting the district judge from exercising any jurisdiction over the cause, and declared the dissolution of the writ an absolute nullity. Specifically, this Court found that:
it was the undeniable duty of the judge to have stood aside, and at once called upon a judge ad hoc, to pass upon the validity of the recusation, and it was not until after the recusation had been declared without foundation that he could take any action in the case. [Emphasis added]
Id. at 92.
Accordingly, this Court established the rule that when a judge’s impropriety is questioned and where he does not acknowledge ex proprio motu that there is good ground for granting the recusation, he must immediately refer the matter to another judge to determine the question of his recusation. Id. In the present case, Judge Liljeberg, at a minimum, should have referred this matter to another judge prior to judicially acting and denying Mr. Levenson’s motion to enroll.
Disaster characterizes Pellerin’s motion to enroll Mr. Levenson as co-counsel as an example of “judge shopping” because enrolling Mr. Levenson would force Judge Liljeberg to recuse himself. We agree that there could be situations where an unscrupulous party might seek to add a particular counsel in order to recuse a judge it believed to be unfavorable. Although Pellerin is represented by Mr. Haasé, its general counsel, it correctly points out that many litigants with general counsel choose to retain specialized trial counsel. In the absence of any specific evidence I ^suggesting Pellerin acted in bad faith, at this point, we cannot rule on *1101 whether Levenson should have been denied the right to enroll the counsel of its choice.
We also note Pellerin’s contention that Disaster’s counsel of record was Judge Liljeberg’s campaign finance manager, and the trial judge’s denial of the motion to enroll ex parte would have an appearance of impropriety. This fact may warrant Judge Liljeberg’s recusal or a hearing to determine if a ground for recusation exists.
However, at this point in the proceeding, the whole question of recusation is premature. After determining whether Mr. Le-venson has a right to enroll as co-counsel, the parties can address the issue of recusal at that time. As Pellerin stated in its Supplemental Brief, Liljeberg Enterprises, Inc.’s counsel provides that it:
no longer intends to call Hans [Judge Liljeberg] as a witness and will stipulate that LEI has no control over Hans and cannot agree to produce him for a deposition.
The United States Supreme Court has recognized that there is a presumption in favor of a party’s right to choose counsel. Wheat v. United States, 486 U.S. 153, 158, 160, 108 S.Ct. 1692, 1696, 1697-1698, 100 L.Ed.2d 140 (1988). The Fifth Circuit Court of Appeals found that depriving a party of his choice of counsel is a penalty that must not be imposed without careful consideration. FDIC v. United States Fire Insurance Company, 50 F.3d 1304, 1313 (5th Cir.1995). In civil matters as well as criminal matters, the right to counsel includes the right to legal representation of one’s choice. McCuin v. Texas Power, 714 F.2d 1255, 1257. This right is “one of constitutional dimensions and should be freely exercised without impingement.” The right to counsel of choice is not absolute. Id. at 1262, 1263. This Lsright can be overridden only if it can be proven that there is a compelling reason to do so. Id.
There must be a balance between allowing a party the right to engage an attorney of that party’s choice versus enrolling a particular attorney which would result in recusal of the judge to whom the case was randomly allotted. This right must be balanced in cases in which it is called into question against the right to prosecute the lawsuit without question of taint and undue influence and society’s right to maintain the highest ethical standards of professional responsibility, as well as judicial integrity. Id. Moreover, this right must not be exercised without thought also to the needs of effective administration of justice. Id.
In the case sub judice, Pellerin’s enrollment of Levenson as co-counsel must be evaluated against Judge Liljeberg’s possible recusation. Therefore, pursuant to our constitutional authority to regulate the practice of law[5] and the lower courts,[6] we order this matter to be randomly re-allotted for a hearing on the motion to enroll counsel. Once the case is assigned to another judge, the party attempting to enroll counsel which would result in the judge’s recusal must establish a reason for doing so and must satisfy the burden of establishing the enrollment was not done to force recusal. Thus, a hearing on the enrollment motion would afford both parties an opportunity to present evidence. Pellerin will have the obligation of proving *1102 that Mr. Levenson was not hired for the purpose of disqualifying the judge. In opposition, Disaster will |14have an opportunity to prove that there exists a reason for impinging upon Pellerin’s fundamental right to chose legal representation.
For the foregoing reasons, we remand this matter to the trial court for random re-allotment for a hearing on the enrollment issue.
REVERSED AND REMANDED.
VICTORY, J., dissents.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.

. Retired Judge Philip C. Ciaccio, assigned as Justice pro tempore, sitting for Associate Justice Catherine D. Kimball.

. Pellerin submits that it had no knowledge of the potential conflict between Mr. Levenson and Judge Liljeberg when it sought Mr. Le-venson' s assistance.

. Judge Lemoine was elected to the bench on January 2, 1991. In this position, he was able to continue to practice law.

. Van Dyke and the judge were co-owners of a law office building named, "Lemoine-Van Dyke Law Center”. The judge rented office space to Michael Brewer and had reciprocal fee arrangements in lieu of the rent. The judge presided over 32 cases which the clients were represented by either Van Dyke or Brewer, failed to disclose his relationship with the attorneys, and failed to recuse himself. This Court spoke of the permissive language of "may be recused” found in LSA-C.C.P. art. 151 that did not mandate that Judge Lemoine recuse himself thereby allowing him to escape punishment for his involvement in civil cases. This Court also noted: "Were it not for the fact that respondent is no longer a judge, we might well be inclined to impose more severe discipline.”

. The power to regulate the practice of law in every aspect properly belongs to this Court and is reserved for it by the constitutional separation of powers. Succession of Wallace, 574 So.2d 348, 350 (La.1991). See LSA-Const. art. II, § 1 ("The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.”)

. LSA-Const. art. V, § 5.